IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN B. NELSON, | ) | |
| | ) | CIVIL ACTION NO. 3:15-64 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| CHRIS W. BENDER; CHRISTOPHER B. | ) | |
| COHN; THOMAS J. QUINN; JAMES M. | ) | |
| BRADY; LOGAN TOWNSHIP, | ) | |
| PENNSYLVANIA; PENNSYLVANIA | ) | |
| STATE UNIVERSITY, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

### I.  Introduction

Presently before this Court is Defendants Chris W. Bender and Logan Township's

("**Moving Defendants**") Motion to Dismiss Amended Complaint in Part and to Strike Portions

of Amended Complaint (ECF No. 23). Moving Defendants move to dismiss Count II of the

Amended Complaint as against Defendant Logan Township for failure to state a claim pursuant

to Federal Rule of Civil Procedure ("**FRCP**") 12(b)(6). ECF No. 24 at 5. Further, Moving

Defendants move to strike portions of the Amended Complaint which they assert relate only to

claims which have not been and cannot be asserted or set forth legal principles or arguments

which should be stricken pursuant to FRCP 12(f). *Id*. Plaintiff Kevin B. Nelson opposes the

motion. ECF No. 28. Moving Defendants filed a reply brief in further support of the motion.

ECF No. 29. Having considered the briefs and all arguments contained therein, and for the

reasons that follow, the Court will **DENY** the motion in its entirety.

1

## II. Jurisdiction and venue

The Court asserts federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, as the Amended Complaint alleges violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the events or omissions giving rise to the claims allegedly occurred in the Western District of Pennsylvania.

## III. Factual background

The facts as pleaded in the Amended Complaint are as follows.

The Pennsylvania State University ("**PSU**") is a state-related institution of higher education created in 1855 by an act of the Pennsylvania General Assembly. ECF No. 20 at ¶ 29. PSU's status as an instrumentality of the Commonwealth has been recognized by all branches of the Commonwealth and Federal governments. *Id*. PSU owns and operates the PSU Altoona Campus and the University Police Department that provides police services to the Altoona campus. *Id*. The PSU Altoona Campus is located in Logan Township, Pennsylvania, and the City of Altoona, Pennsylvania. *Id*. at ¶ 5. Logan Township is the second largest subdivision in Blair County, Pennsylvania. *Id*. at ¶ 28. The Township owns and operates the Logan Township Police Department ("**LTPD**"), which is not an accredited law enforcement agency. *Id*. at ¶¶ 6-7, 28.

In April of 2013, Plaintiff was an honor student enrolled in the College of Engineering at the PSU Altoona Campus. *Id*. at ¶ 1. Plaintiff made the Dean's List with engineering level courses and attended a meeting of the Alpha Lambda Delta Freshman Honor's Society. *Id*. at ¶ 2. Plaintiff was on course to graduate from the College of Engineering. *Id*. at ¶ 3.

2

Nittany Pointe is a privately-owned apartment complex in Altoona, Pennsylvania. *Id.* at ¶ 34. On April 6, 2013, there was an outdoor fraternity party known as "Toon Fest" on the grounds of Nittany Pointe that the Township and Nittany Pointe apartment complex owners permitted to take place annually. *Id.* at ¶¶ 10, 35, 36. During this party, minors consumed alcoholic beverages and, at times, became disorderly. *Id.* Defendant Logan Township had prior knowledge that minors attended, consumed alcoholic beverages, and at times became disorderly, at Toon Fest. *Id.* at ¶¶ 37, 38, 134. Defendant Logan Township had prior notice of Toon Fest and did not take any official action to prevent Toon Fest from taking place as scheduled, even though tension had developed between the residents of Nittany Pointe and the police officers of the LTPD to a point where a lieutenant with the LTPD had publicly commented that "[their] guys [didn't] even want to go up there." *Id.* at ¶¶ 39-40. During Toon Fest, officers went to the scene, sat, observed, and waited to enforce the Township's open container ordinance. *Id.* at ¶¶ 41-42.

At some point, persons at the outdoor party became disorderly and Defendant Bender declared that a riot situation existed. *Id.* at ¶ 44. It was subsequently discovered that Officer Bender had exaggerated his description of the situation as a "riot." *Id.* at ¶ 44 n. 2. Upon discovering the disorderly condition at the party, Defendant Bender summoned police officers from neighboring jurisdictions to Nittany Pointe, and directed the crowd to disperse, which it did. *Id.* at ¶ 45.

Plaintiff did not attend the party, did not consume any alcoholic beverages, and did not participate in the public disorder that had occurred during the party. *Id.* at ¶ 11. Plaintiff had been sitting on his porch playing guitar at approximately 4:20 p.m., when Defendant Bender

3

approached Plaintiff's porch with his hand on the butt of his holstered gun and using profanity, and directed Plaintiff and his guests to go inside of Plaintiff's residence. *Id.* at ¶¶ 8, 12, 46. After his guests went inside, Plaintiff asked whether a dangerous condition existed, and Defendant Bender responded by calling Plaintiff an "idiot." *Id.* at ¶¶ 47-48.

Plaintiff asked why he needed to go inside, and whether the law actually required him to leave his porch. At this time, Officer Bender "launched [an] unprovoked attack," during which he grabbed Plaintiff by the neck and choked Plaintiff, bent Plaintiff's right arm backward over a metal railing, hyperextending Plaintiff's right wrist, and tasered Plaintiff, causing Plaintiff to suffer pain. *Id.* at ¶¶ 13, 52-53, 58. During this time, Plaintiff was not able to breathe freely, turned visibly red, and became scared for his physical safety and wellbeing. *Id.* at ¶ 55. Officer Bender was employed by the LTPD as a police officer during all relevant times, and acted pursuant to and in accordance with the policies of the LTPD. *Id.* at ¶ 24.

During this time, three PSU Altoona police officers, Christopher B. Cohn, Thomas J. Quinn, and James M. Brady, prevented bystanders from intervening on Kevin's behalf, assisted Officer Bender in attacking Plaintiff, and stood by and watched the attack occur. *Id.* at ¶ 56. Defendants Cohn, Quinn, and Brady were employed during all relevant times as PSU Altoona police officers. Their actions and inactions were taken pursuant to and in accordance with the policies of the PSU Altoona Police Department. *Id.* at ¶¶ 25-27.

At one point, Defendant Bender instructed Plaintiff to "stand up," but the force he used on Plaintiff prevented Plaintiff from complying with this instruction. *Id.* at ¶ 62. As soon as it was possible for Plaintiff to stand up, he did so, and asked why force was being used against him. *Id.* at ¶ 63. Defendant Bender then yanked Plaintiff's arm in an attempt to drag him over

the metal porch railing, and threatened to use the taser on Plaintiff. *Id.* at ¶ 64. Defendants Cohn and Quinn assisted Defendant Bender in forcing Plaintiff over the porch railing, while Defendant Brady watched. *Id.* at ¶ 65. Defendant Bender then fired probes from his Karbon Arms MPID ECW into Plaintiff's back, delivering an electronic charge into Plaintiff's body. *Id.* at ¶ 66. This caused Plaintiff to suffer great pain and discomfort and to become largely incapacitated. *Id.* at ¶ 67. Prior to handcuffing Plaintiff behind his back, Defendant Bender shoved his Karbon Arms MPID into Plaintiff's chest and threatened to use the taser on Plaintiff again. *Id.* at ¶ 68. A properly trained police officer would know that the deployment of an ECW into a person's chest is a last resort, as doing so could cause cardiac arrest. *Id.* at ¶ 69.

Following these events, Defendant Bender charged Plaintiff with several criminal charges. *Id.* at ¶ 70. Defendant Bender also filed a sworn Affidavit of Probable Cause that contained false statements. *Id.* at ¶ 71. The aforementioned video of the events in question established that probable cause did not exist to support three of the criminal charges (Aggravated Assault on a Police Officer (F2), Riot, (F3), Resisting Arrest (M2)), and upon seeing the video, the Blair County District Attorney voluntarily dismissed these three criminal charges. *Id.* at ¶¶ 70, 75-76. The Blair County District Attorney also offered to dispose of the remaining criminal charges filed against Plaintiff (*see id.* at ¶ 70 n. 4) through the ARD program. *Id.* at ¶ 76. Plaintiff's criminal record has since been expunged. *Id.* at ¶ 77. Media accounts of Defendant Bender's filing of felony criminal charges against Plaintiff will remain on the Internet forever. Further, Plaintiff suffered physical and emotional injury and damage to his reputation, was unjustly disciplined by and suspended from Defendant PSU, was forced to withdraw from PSU to escape the embarrassment associated with being regularly referred to as "the kid who got

5

tased," lost a significant amount of educational time, and has been forced to pursue alternative educational and career options. *Id*. at ¶ 79.

The actions and inactions of the officers were captured on video. *Id*. at ¶ 15. This video vindicated Plaintiff and led to the voluntary dismissal of criminal charges against him filed by Officer Bender, and an offer of Accelerated and Rehabilitative Disposition ("**ARD**") on the remaining criminal charges. *Id*. at ¶¶ 15-16. On the video, Plaintiff can be heard screaming in agony and pleading with the Defendant officers to stop. *Id*. at ¶ 60. Bystanders can also be heard on the video pleading with the officers to stop. *Id*. at ¶ 61.

Following these events, Logan Township did not discipline or retrain Officer Bender and the district attorney did not criminally prosecute him. *Id*. at ¶ 17. Further, PSU did not discipline or retrain Officers Cohn, Quinn, and Brady, and the district attorney did not criminally prosecute them. *Id*. at ¶ 18.

## IV. Legal Standard

### a. Motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6)

A pleading that states a claim for relief must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. Fed. R. Civ. P. 8(a). A party may ask that a complaint or portion of a complaint be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

In determining the sufficiency of the complaint, a district court must conduct a two-part analysis. First, the court should separate the factual and legal elements of a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must accept all of the complaint's

well-pleaded facts as true, but may disregard any legal conclusions. Threadbare recitals of the cause of action do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, the court must determine whether the factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). The complaint need not include "detailed factual allegations." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court must construe the alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *See id.* at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir.2002)). A complaint must present sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *(Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678)).

In determining whether a plaintiff has shown a "plausible claim for relief" the Court must conduct a "context specific" inquiry that requires it to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The relevant record under consideration includes the complaint and any "document *integral to or explicitly relied* upon in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

If a complaint is vulnerable to dismissal under Rule 12(b)(6), the district court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236; *see also Shane v. Fauver*,

7

213 F.3d 113, 115 (3d Cir. 2000) ("[L]eave to amend generally must be granted unless the amendment would not cure the deficiency.").

### b. Motion to strike portions of the Amended Complaint pursuant to FRCP 12(f)

Federal Rule of Civil Procedure 12(f) permits the court to "strike from a pleading...any redundant, immaterial, impertinent, or scandalous matter." Its purpose is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F.Supp.2d 393, 402 (E.D.Pa. 2002). However, motions to strike are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Zaloga v. Provident Life and Acc. Ins. Co. of America*, No. 3:09-cv-635, 2009 WL 4110320, at *8 (M.D.Pa. Nov. 24, 2009). As for the terms in Rule 12(f), a matter is immaterial if it "has no essential or important relationship to the claim for relief." *Donnelly v. Commonwealth Fin. Sys.*, No. 07-cv-1881, 2008 WL 762085, at *4 (M.D.Pa. Mar. 20, 2008). An "impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* A matter is scandalous if it "improperly casts a derogatory light on someone, most typically a party to the action." *Id.*

### V. Discussion

#### a. Plaintiff's Claims

In Count I of the Amended Complaint, Plaintiff alleges that the Individual Defendants are liable for excessive force under the Fourth Amendment and pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendant Bender's reckless or deliberate conduct unreasonably created

8

the need for the Defendant officers to use force to effect Plaintiff's arrest. ECF No. 20 at ¶ 86. Therefore, Plaintiff alleges, the force used against him was unreasonable and thus unlawful. *Id.* at ¶ 87. Plaintiff alleges that even if the Defendant Officers enjoyed a privilege to use force against Plaintiff, the Defendant Officers used more force than was reasonably necessary to effect Plaintiff's arrest, and that as a result, the force used was unreasonable and unlawful. *Id.* at ¶¶ 88-89. Lastly, Plaintiff asserts that the Defendant Officers had a legal duty and an appreciable opportunity to intervene to protect Plaintiff from the other Defendant Officers' unlawful uses of force, but failed to do so. *Id.* at ¶ 90. Plaintiff alleges that they instead either participated in the unlawful use of force, or stood by and watched while the unlawful use of force occurred, and that their conduct was therefore unlawful. *Id.* at ¶¶ 91-92.

In Count II of the Amended Complaint, Plaintiff alleges that Defendants Logan Township and PSU are liable under a theory of municipal liability. *Id.* at ¶¶ 94-95. In support of Count II, Plaintiff alleges that Defendant Logan Township operates the LTPD, which was formed in April 1966. *Id.* at ¶¶ 96-97. Plaintiff asserts that Defendant Bender acted during all relevant times pursuant to the policies, practices, and customs adopted and/or ratified by the Defendant Logan Township. *Id.* at ¶ 101.

In further support of Count II, Plaintiff alleges that PSU operates the University Police Services, which provides police services to the PSU Altoona Campus. *Id.* at ¶ 104. Plaintiff alleges that PSU's University Police Services contingency stationed at the Altoona Campus consists of a police chief, eight police officers (including Defendants Cohn, Quinn, and Brady), and auxiliary police. *Id.* at ¶ 105. The police officers are Act 120 certified municipal police officers who are authorized to carry firearms and empowered to make arrests. *Id.* at ¶ 106.

9

Plaintiff alleges that, during all relevant times, Defendants Cohn, Quinn, and Brady acted pursuant to the policies, practices, and customs adopted and/or ratified by Defendant PSU. *Id.* at ¶ 107.

Plaintiff alleges that policymakers of the Defendants Logan Township and PSU were on notice that police officers employed by the Defendants Logan Township and PSU would regularly be in situations where they would arrest people with a privilege to use reasonable necessary force to do so. *Id.* at ¶ 108. Plaintiff alleges that said policymakers had a duty to enact proper policies to govern the police officers in their employ, and to properly train the police officers in their employ. *Id.* at ¶ 109. Plaintiff asserts that Defendants Logan Township and PSU maintained policies, practices, and customs, which were the moving force that resulted in Plaintiff's constitutional and statutory rights being violated. *Id.* at ¶ 110. Moreover, Plaintiff asserts that the Defendants Logan Township and PSU were on notice of a need for further training but failed to provide such training, which resulted in Plaintiff's constitutional and statutory rights being violated. *Id.* at ¶ 111. Specifically, Plaintiff alleges that Defendants Logan Township and PSU failed to implement a policy, enforce a policy, or train police officers on the Fourth Amendment of the U.S. Constitution. *Id.* at ¶ 112. Plaintiff alleges further that Defendants Logan Township and PSU have failed to implement an effective process to ensure that policies and training of the Defendants Logan Township and PSU are being followed by their officers. *Id.* at ¶ 113.

Plaintiff asserts that when it has been determined that officers violated the constitutional or statutory rights of persons, or used unlawful force against persons, or when police officers have been named in citizen complaints, or when the Defendants Logan Township or PSU have

settled civil lawsuits, the Defendants Logan Township and PSU have not required police officers to receive correctional or additional training. *Id*. at ¶ 114. Plaintiff asserts that Defendants Logan Township and PSU did not follow their internal affairs policy and investigate, discipline, or retrain the individual defendants for their conduct related to Plaintiff. *Id*. at ¶ 115. Plaintiff alleges that if it is ultimately determined that an internal affairs investigation did occur, discovery will show that the investigation was triggered as a result of the instant litigation as opposed to when the Defendants Logan Township and PSU first learned of the incident. *Id*. at ¶ 116.

Plaintiff alleges that the policymakers for Defendants Logan Township and PSU have knowingly failed to maintain policies, practices, and training that meet the minimum accreditation standards set by the Pennsylvania Law Enforcement Accreditation Program ("**PLEAC**"), the Commission on Accreditation for Law Enforcement ("**CALEA**"), and other similar types of accrediting organizations. *Id*. at ¶¶ 117-19. Plaintiff alleges that prior to the incident with Plaintiff, the Defendant Logan Township was on notice that the training and policy failures existed and needed to be corrected. *Id*. at ¶ 120.

Plaintiff cites specific events in support of the above assertions. Plaintiff alleges that in March of 2003, the police chief for the Defendant Logan Township resigned as a result of an investigation into whether he cheated on the examination to obtain certification from the Commonwealth of Pennsylvania's Municipal Police Officer's Education and Training Commission ("**MPOETC**") as a condition to his employment as a municipal police officer in Pennsylvania. *Id*. at ¶ 121. Further, Plaintiff alleges that in July of 2008, a police officer who was employed by Defendant Logan Township was involved in a physical altercation with a police

11

officer from another police department and a citizen, was criminally charged by a law enforcement agency other than LTPD with disorderly conduct, and pled guilty. *Id*. at ¶ 122. Plaintiff alleges that in January of 2009, a police officer who was employed by Defendant Logan Township was criminally charged with criminal mischief, disorderly conduct, harassment, and retaliation against a witness, victim or party, by a law enforcement agency other than LTPD, for using a baseball bat to threaten a civilian and for smashing the rear window of a civilian's vehicle. *Id*. at ¶ 124. Plaintiff alleges that on December 12, 2012, police officers who were employed by the Defendant Logan Township forcibly placed a person they were arresting on the floor and, once he was lying on his stomach with his hands handcuffed behind his back, kicked him in the head several times, causing him to suffer a physical injury. *Id*. at ¶ 126. Plaintiff alleges that in April of 2015, an officer of the Defendant Logan Township was arrested for insurance fraud, theft, and the unauthorized use of an automobile. *Id*. at ¶ 129.

Plaintiff alleges that in each of these instances, despite knowing of the unlawful use of force by one or more of its officers who were obligated to follow department policy both on and off duty, the Defendant Logan Township did not provide officers with retraining on the Department's use of force policy or on the proper and lawful use of force. *Id*. at ¶¶ 123, 125, 127. Plaintiff alleges that the unlawful culture in the Defendant Logan Township appears to continue to be the norm. *Id*. at ¶ 128.

Therefore, Plaintiff alleges that the failure of Defendants Logan Township and PSU to maintain proper policies, practices, and training, thereby maintaining a culture where criminal conduct committed by police officers is the norm, directly caused Plaintiff to suffer constitutional violations. *Id*. at ¶ 130. Plaintiff alleges that Defendant Logan Township failed to

12

implement and/or enforce a policy and training on the Fourth Amendment and the lawful use of force that would have permitted Defendant Bender to understand that: (i) the force he used against Plaintiff was excessive and unreasonable and therefore unlawful; (ii) the force used by Defendants Cohn, Quinn, and Brady, against Plaintiff was excessive and unreasonable and therefore unlawful; and (iii) Defendant Bender had a legal duty to intervene to protect Plaintiff from Defendants Cohn, Quinn, and Brady. *Id.* at ¶ 131. Similarly, Plaintiff alleges, Defendant PSU failed to implement and/or enforce a policy and training on the Fourth Amendment and the use of force that would have permitted Defendants Cohn, Quinn, and Brady to understand that: (i) the force they used against Plaintiff was excessive and unreasonable, and therefore, unlawful; (ii) the force used by Defendant Bender against Plaintiff was excessive and unreasonable and, therefore, unlawful; and (iii) they had a legal duty to intervene to protect Plaintiff from Defendant Bender and each other. *Id.* at ¶ 132. Further, Plaintiff alleges that the Defendants Logan Township and PSU failed to implement and/or enforce a policy and training on the Fourth Amendment and on the use of force that would have provided Defendants Bender, Cohn, Quinn, and Brady, with de-escalation techniques that would have prevented the need for the use of any force against Plaintiff. *Id.* at ¶ 133.

Plaintiff asserts that Defendant Bender's actions in choking Plaintiff, bending Plaintiff's arm behind his back and over a metal porch railing, hyperextending Plaintiff's wrist, pulling Plaintiff over a porch railing, and using an Electronic Control Weapon on Plaintiff, constitute official oppression and torture. *Id.* at ¶ 135. Further, Plaintiff alleges that the use of force techniques used by Defendant Bender did not comport with generally accepted force techniques taught in the municipal police academy, used in accredited law enforcement agencies, or

permitted by law. *Id.* at ¶ 136. Despite being provided with notice of Defendant Bender's allegedly unlawful actions, and the video evidence that existed, the Defendant Logan Township did not discipline or retrain Defendant Bender. *Id.* at ¶ 137. Plaintiff alleges that these failures further prove the existence of unlawful policies, practices, and customs, that existed at the time of the incident and that caused Plaintiff's constitutional injuries. *Id.* at ¶ 138. Moreover, Plaintiff alleges that Defendant Logan Township's failure to discipline or retrain Defendant Bender constitutes ratification of his unlawful conduct. *Id.* at ¶ 139.

Similarly, Plaintiff alleges that despite receiving notice of Defendants Cohn's, Quinn's, and Brady's unlawful conduct through official police reports, and widespread media coverage of the incident, Defendant PSU failed to discipline or retrain Defendants Cohn, Quinn, and Brady. *Id.* at ¶ 140. Plaintiff alleges that PSU's failures in this regard provide evidence of the existence of unlawful policies, practices, and customs that existed at the time of the incident and that caused Plaintiff's constitutional injuries. *Id.* at ¶ 141. Lastly, Plaintiff asserts that Defendant PSU's failure to discipline or retrain Defendants Cohn, Quinn, and Brady, constitutes ratification of their unlawful conduct. *Id.* at ¶ 142.

### b. Summary of Defendant's arguments

Moving Defendants move to dismiss Count II of the Amended Complaint with prejudice as against Defendant Logan Township for failure to state a claim pursuant to FRCP 12(b)(6), and to strike portions of the Amended Complaint pursuant to FRCP 12(f). ECF No. 23.

In support of their motion to dismiss Count II of the Amended Complaint as against Defendant Logan Township for failure to state a claim, Moving Defendants first argue that because *respondeat superior* liability is not recognized under 42 U.S.C. § 1983 ("**Section 1983**"), a

14

municipality cannot be held liable under Section 1983 solely because it employs an alleged tortfeasor. ECF No. 24 at 7-8. Therefore, Moving Defendants argue, '[T]o establish municipal liability under Section 1983, the plaintiff must identify a formal governmental 'policy' or an informal governmental 'custom' of the municipality that caused the alleged violation of the plaintiff's constitutional rights." *Id.* at 8. Moving Defendants argue that the Plaintiff's cited incidents are insufficiently similar to the conduct alleged to have occurred in the Amended Complaint to demonstrate the "requisite pattern of similar past conduct to support a claim of municipal liability under [Section 1983]." *Id.* at 11. Further, Defendants argue that the one alleged prior incident involving the use of excessive force is insufficient as a matter of law to establish municipal liability for failure to take preventative action. *Id.* at 12. Therefore, Moving Defendants argue, Plaintiff has failed to state a claim for municipal liability against Logan Township and Count II should be dismissed as to this Defendant. *Id.* at 13.

In support of their motion to strike portions of the Amended Complaint pursuant to FRCP 12(f), Moving Defendants assert that "the Amended Complaint is replete with assertions to the effect that Officer Bender lacked probable cause for three of the six criminal charges that were filed against Plaintiff in connection with the subject incident." *Id.* at 15. These allegations, Moving Defendants argue, "have no bearing upon the issues raised by the two claims asserted in this case—i.e., whether Officer Bender used reasonable force in effecting Plaintiff's arrest, and if so, whether the alleged use of such force was the direct result of a municipal policy or custom of Logan Township." *Id.* Therefore, Moving Defendants argue, allowing these allegations to remain in the Amended Complaint will "confuse the issues in this case," and "Defendants will be unfairly prejudiced by having to litigate the issue of probable cause for any of the charges."

15

*Id.* at 15-16. Lastly, Moving Defendants argue that the Court should strike specified paragraphs of the Amended Complaint that "consist solely of recitations of the legal principles that purportedly govern Plaintiff's claims." *Id.* at 16.

### c. Analysis

#### i. Plaintiff has stated facts sufficient to state a claim for municipal liability against Defendant Logan Township

Moving Defendants argue that Count II of the Amended Complaint should be dismissed with prejudice as against Defendant Logan Township for a failure to state a claim. ECF Nos. 23, 24. Specifically, Moving Defendants argue that the Plaintiff includes only conclusory allegations that fail, as a matter of law, to "demonstrate the requisite pattern of similar past conduct to support a claim of municipal liability under [Section 1983]." ECF No. 24 at 11. Further, Moving Defendants argue that the past incidents that Plaintiff cites in the Amended Complaint are factually dissimilar from the events alleged to have occurred in the Amended Complaint, and that the one past event that involved an alleged excessive use of force is insufficient as a matter of law to establish municipal liability under Section 1983. *Id.* at 11-12. Therefore, Moving Defendants argue, Plaintiff has failed to establish that the municipality's decision makers were on actual or constructive notice that a failure to train caused its employees to violate citizens' constitutional rights, and accordingly failed to establish deliberate indifference on the part of Defendant Logan Township. *Id.* at 9. In opposition, Plaintiff argues that the Amended Complaint alleges, sufficiently to survive the instant motion to dismiss, that Defendant Logan Township was aware that its officers were engaging in unlawful conduct and that it failed to maintain policies, procedures, and training that met the standards set by CALEA, PLEAC, and

16

MPOETC. ECF No. 28 at 3-4. In their reply brief, Moving Defendants argue that "Plaintiff has set forth no allegations demonstrating that the Township was aware of any prior alleged use of excessive force by Officer Bender and failed to take appropriate corrective action." *Id.* at 6-7. The Court holds that Plaintiff has stated facts sufficient to sustain a claim for municipal liability against Defendant Logan Township and therefore denies Moving Defendants motion to dismiss pursuant to FRCP 12(b)(6).

Municipal employers cannot be held vicariously liable for the constitutional violations committed by their employees. *Monell v. NYC Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, "[m]unicipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation." *Moeck v. Pleasant valley School Dist.*, 983 F.Supp.2d 516, 524 (M.D.Pa. 2013) (citing *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007)).

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citation and quotations omitted). A policy can also be established by "a municipality's failure to train its employees." *Moeck*, 983 F.Supp.2d at 524 (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

A plaintiff may also establish municipal liability by identifying a "custom" that caused the asserted constitutional violation. A course of conduct is considered to be a custom when, [al]though not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691-92, 98 S.Ct. 2018, 56 L.Ed2d 611 (internal citations omitted).

17

Once such municipal policy or custom is established, the plaintiff must demonstrate that the municipality, "through its deliberate conduct…was the moving force behind the injury alleged." *Berg v. Cnty. Of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed2d 626 (1997) (internal quotations omitted)). Where such policy does not facially violate the Constitution, "causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Id.* (quotations and citations omitted).

"Failure to screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *Id.* "If no pattern of violations exists, the plaintiff bears a high burden to establish deliberate indifference. He must demonstrate that the violation of federal rights was a highly predictable consequence of the municipality's failure to train its employees regarding how to handle recurring situations. The fact that a situation is likely to recur and the predictability that a municipal employee will violate federal rights without adequate training can reflect deliberate indifference." *Moeck*, 983 F.Supp. at 524 (citing *Berg*, 291 F.3d at 276).

Accepting the well-pleaded facts in the Amended Complaint as true, and disregarding any legal conclusions, the Court holds that the Amended Complaint alleges facts sufficient to state a claim for municipal liability against Defendant Logan Township. Plaintiff alleges that Defendant Bender acted at all times pursuant to the policies, practices, and customs adopted and/or ratified by the Defendant Logan Township. ECF No. 20 at ¶ 101. Plaintiff alleges that prior to the incidents described in the Amended Complaint, "the Defendant Township was on

18

notice that…training and policy failures existed and needed to be corrected." *Id.* at ¶ 120. Plaintiff alleges that in at least three instances, despite knowing of the unlawful use of force by one of its officers, the Defendant Logan Township "did not provide officers with retraining on the department's use of force policy, or on the proper and lawful use of force." *Id.* at ¶¶ 123, 125, 127. Further, Plaintiff alleges that following the events described in the Amended Complaint, Defendant Logan Township failed to implement or enforce a policy and training on the Fourth Amendment and on the lawful use of force. *Id.* at ¶ 131. Thus, Plaintiff alleges, the failure of the Defendant Logan Township maintained "a culture where criminal conduct committed by police officers is the norm" and "directly caused [Plaintiff] to suffer his constitutional injuries." *Id.* at ¶ 130. These well-pleaded facts, taken as true, are sufficient at the motion to dismiss stage to establish that a municipal policy caused Plaintiff's constitutional violations. Because taken as true, these allegations are sufficient to sustain a claim for municipal liability against Defendant Logan Township, the Court denies Moving Defendants' partial motion to dismiss.

## ii. The Court declines Moving Defendants' request that it strike portions of the Amended Complaint pursuant to FRCP 12(f)

Moving Defendants request that the Court order the following portions of the Amended Complaint stricken: Paragraphs 30-33, 71, 72, 75, 81 through 85, 94, 95; the reference to "false criminal charges" in Paragraph 76; the reference to "false criminal charges" in Paragraph 78; the portion of footnote 2 on page 7 of the Amended Complaint, beginning with, "In an attempt to justify" through the end of said footnote; and Exhibit B to the Amended Complaint. *Id.*

19

FRCP 12(f) permits the court to strike "any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "The purpose of a motion to strike is to clean up pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McIreney v. Moyer Lumber And Hardware Inc.*, 244 F.Supp.2d 393, 402 (E.D.Pa. 2002) (citation omitted). "A court possesses considerable discretion in disposing of a motion to strike under Rule 12(f). However, motions to strike are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Hellman v. Kercher*, 2008 WL 1969311, at *4 (W.D.Pa. May 6, 2008) (citing *River Road Dev. Corp. v. The Carlson Corp.*, No. 89-7037, 1990 WL 69085, at *3 (E.D.Pa. May 23, 1990) (internal quotations omitted)). "The standard for striking under Rule 12(f) is strict and only allegations that are so unrelated to plaintiff's claims as to be unworthy of any consideration should be stricken. Striking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice." *Johnson v. Anhorn*, 334 F.Supp.2d 802, 809 (E.D.Pa. 2004) (internal quotations and citations omitted).

For the reasons stated below, the Court denies Moving Defendants' request to strike portions of the Amended Complaint.

### 1. Allegations regarding the charges against Plaintiff that were voluntarily dismissed

Moving Defendants argue that portions of the Amended Complaint should be stricken as impertinent and immaterial allegations under FRCP 12(f). Moving Defendants assert that the "Amended Complaint is replete with assertions to the effect that Officer Bender lacked probable cause for three of the six criminal charges that were filed against Plaintiff in connection with the

subject incident." ECF No. 24 at 15. Moving Defendants assert that such allegations have no bearing upon the issues raised in Count I or Count II of the Amended Complaint, and that allowing Plaintiff to maintain such allegations will "confuse the issues in the case." *Id*. Further, Moving Defendants argue that, because Plaintiff's agreement to an ARD disposition of some charges "conclusively establishes the existence of probable cause as to the other charges arising from the same incident," allowing these allegations to remain will unfairly prejudice the Defendants because they will have "to litigate the issue of probable cause...when the validity of all charges is beyond question as a matter of law, due to Plaintiff's decision to accept an ARD resolution." *Id*. at 16.

In opposition, Plaintiff argues that there is no legal authority to support Moving Defendants' motion to strike portions of the Amended Complaint. Specifically, Plaintiff asserts that the expungement order does not preclude Plaintiff from relying on his own records in litigation, and that any claimed prejudice against Moving Defendants has been alleviated by the fact that a copy of the "supposedly expunged document" is attached to the Amended Complaint. ECF No. 28 at 7. Further, Plaintiff argues that the allegedly false statements contained in the criminal complaint and the filing of the three charges not subject to the ARD agreement "are directly relevant to the excessive force claim, in that they provide factual support for the claim that Defendant Bender used unlawful force. Such facts are clear evidence that before Defendant Bender knew that a video existed, he knew that he had used excessive force and that he needed to have a legal explanation to attempt to justify his use of force." *Id*. at 8. Lastly, Plaintiff argues that "the fact that Defendant Bender falsely filed the criminal charges that were voluntarily dismissed by the district attorney after viewing the video evidence, and

21

the fact that the Defendant Township did not discipline Defendant Bender for his actions, is post-event evidence that is directly relevant to establishing the *Monell* claim." *Id.* at 9. In their reply brief, Moving Defendants cite cases holding that an officer's subjective intent at the time of an arrest is irrelevant to an excessive force claim, which requires the jury to determine whether the use of force was objectively reasonable. ECF No. 29 at 3-4.

Acknowledging that a claim for excessive force is analyzed under an objective standard, the Court cannot conclude at this stage in the litigation that the allegations regarding the charges against Plaintiff that were voluntarily dismissed have no possible relation to Plaintiff's claims. *See Hellman v. Kercher*, 2008 WL *4. As noted above, striking a pleading is a "drastic remedy to be resorted to only when required for the purposes of justice." *Johnson*, 334 F.Supp.at 809. The Court holds that Moving Defendants have not met this legal standard. Moving Defendants' motion to strike the following portions of the Amended Complaint is thus denied: Paragraphs 71, 72, 75; the reference to "false criminal charges" in Paragraph 76; the reference to "false criminal charges" in Paragraph 78; the portion of footnote 2 on page 7 of the Amended Complaint, beginning with, "In an attempt to justify" through the end of said footnote; and Exhibit B to the Amended Complaint.

## 2. Allegations that Moving Defendants argue constitute "legal conclusions"

Moving Defendants also move to have specified paragraphs of the Amended Complaint stricken because they "consist solely of recitations of the legal principles that purportedly govern Plaintiff's claims." ECF No. 24 at 16. Having reviewed the specified portions of the Amended Complaint, the Court does not conclude that justice requires these paragraphs to be

stricken pursuant to FRCP 12(f). The identified paragraphs are not "so unrelated to [Plaintiff's] claims as to be unworthy of any consideration," nor do they confuse the issues in this case or appear to be prejudicial to the Moving Defendants. The Court therefore concludes that these paragraphs of the Amended Complaint do not warrant the "drastic remedy" of striking part of Plaintiff's pleading. *See Johnson*, 334 F.Supp.2d at 809.

The Court thus denies Moving Defendants' motion to strike the following portions of the Amended Complaint: Paragraphs 30-33, 81 through 85, 94, and 95.

## VI.    Conclusion

For the foregoing reasons, the Court holds that Plaintiff has alleged sufficient facts to support its claim in Count II of the Amended Complaint as against Defendant Logan Township. Further, the Court holds that Moving Defendants' motion to strike portions of the Amended Complaint is not appropriate at this stage in the litigation. Moving Defendants' motion is therefore **DENIED** in its entirety.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN B. NELSON, | ) | |
| | ) | **CIVIL ACTION NO. 3:15-64** |
| Plaintiff, | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| v. | ) | |
| | ) | |
| CHRIS W. BENDER; CHRISTOPHER B. | ) | |
| COHN; THOMAS J. QUINN; JAMES M. | ) | |
| BRADY; LOGAN TOWNSHIP, | ) | |
| PENNSYLVANIA; PENNSYLVANIA | ) | |
| STATE UNIVERSITY, | ) | |
| Defendants. | ) | |

### ORDER

**AND NOW,** this ___7th___ day of December, 2015, upon consideration of Defendants Chris W. Bender and Logan Township's Motion to Dismiss Amended Complaint in Part and to Strike Portions of Amended Complaint (ECF No. 23) and brief in support thereof (ECF No. 24), and upon further consideration of the Brief of Plaintiff in Opposition to the Partial Motion of Defendants Bender and Township to Dismiss the Amended Complaint and/or to Strike Language (ECF No. 28), and upon further consideration of Defendants Chris W. Bender and Logan Township's Reply to Plaintiff's Brief in Opposition to Motion to Dismiss Amended Complaint in Part and to Strike Portions of Amended Complaint (ECF No. 29), **IT IS HEREBY ORDERED** that Moving Defendants' motion to dismiss in part and to strike (ECF No. 23) is **DENIED.**

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**